[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-13660
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 14, 2011
JOHN LEY
CLERK

D.C. Docket No. 1:09-cr-20960-CMA-3


UNITED STATES OF AMERICA,

Plaintiff–Appellee,

versus

RAMON SOSA MONTERO,

Defendant–Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(September 14, 2011)

Before TJOFLAT, CARNES and KRAVITCH, Circuit Judges.

PER CURIAM:

Ramon Sosa Montero (Sosa) was convicted by a jury of conspiring to possess cocaine with intent to distribute and attempting to possess cocaine with intent to distribute, both in violation 21 U.S.C. §§ 841 and 846. Sosa was sentenced to 320 months' imprisonment. Sosa now appeals from his convictions and sentence and argues (1) that the government's evidence was insufficient to support his convictions, (2) that various evidentiary errors and discovery violations, along with other prosecutorial misconduct, resulted in cumulative error that denied him a fair trial, (3) that the district court abused its discretion in denying him an evidentiary hearing on his motion for a new trial, and finally (4) that the district court erred in calculating his guidelines range. Because we conclude that there was sufficient evidence to support Sosa's convictions, that there was not cumulative error, that the district court did not abuse its discretion in denying Sosa an evidentiary hearing, and that it properly calculated his guidelines range, we affirm.

I.

On November 3, 2009, Sosa was arrested inside Timba's, a Cuban restaurant in Miami, along with his co-conspirators, just after they had finished negotiations to obtain 2 kilograms of cocaine. Those 2 kilograms were part of a larger shipment from Colombia that an undercover officer had been attempting to

2

"sell" to Sosa's co-conspirators for over a month. The negotiations had stalled because the conspirators were unable to get enough cash to buy the cocaine. They had hoped to get some of the cocaine on credit and then use the proceeds from its sale to finance the rest of the transaction. Although the undercover officer intially had been unwilling to deal on those terms, he eventually he agreed that the conspirators could pay the transportation costs for two kilograms of the shipment and could then use the proceeds from selling those two kilograms to purchase the rest of the cocaine. But they still needed money. And after about a month of planning and just before they were arrested, Sosa entered the picture as their financier.

## II.

We review a district court's denial of a motion for judgment of acquittal based on the sufficiency of the evidence *de novo*. *United States v. Friske*, 640 F.3d 1288, 1290 (11th Cir. 2011). But we consider the evidence in the light most favorable to the government and we will not overturn a conviction if any reasonable construction of the evidence supports the jury's verdict. *Id.* at 1291.

To obtain a conviction for attempted possession of cocaine with intent to distribute, the government must prove beyond a reasonable doubt that a defendant (1) acted with the kind of culpability required to possess cocaine knowingly and

willfully and with the intent to distribute it; and (2) engaged in conduct that constituted a substantial step toward the commission of the crime under circumstances strongly corroborative of his criminal intent. *United States v. McDowell*, 250 F.3d 1354, 1365 (11th Cir. 2001).

To obtain a conviction for conspiracy to possess cocaine with intent to distribute, the government must prove beyond a reasonable doubt that (1) there was an agreement to possess cocaine with intent to distribute (2) that the defendant knew about and (3) voluntarily joined. *United States v. Charles*, 313 F.3d 1278, 1284 (11th Cir. 2002).

Here the quantity of "sham cocaine" that Sosa attempted to possess was sufficient to establish Sosa's intent to distribute. *United States v. Hernandez*, 433 F.3d 1328, 1333 (11th Cir. 2005) (concluding that two kilograms of cocaine was sufficient evidence of intent to distribute). And Sosa's presence at the scene, the three hours he waited for the drug dealer to return to Timba's with the cocaine, and his co-conspirator Rendelio Garcia's testimony that Sosa gave him the money to purchase the cocaine, was sufficient evidence that he took a substantial step towards possession. Furthermore, Garcia's testimony about Sosa's participation in and knowledge of the conspiracy, as well as the phone calls between the two men in the days leading up to the deal were sufficient to establish Sosa's participation

4

in the conspiracy. *Cf. United States v. Fernandez*, 136 F.3d 1434, 1438 (11th Cir. 1998) (stating that the uncorroborated testimony of a co-conspirator can be sufficient to support a conspiracy conviction.). Accordingly we conclude that there was sufficient evidence to support Sosa's convictions.

III.

In reviewing a cumulative-error claim, we review all preserved errors and all plain errors to determine whether taken together they denied the defendant a fair trial. *United States v. Baker*, 432 F.3d 1189, 1223 (11th Cir. 2005). If there are no errors or only a single error, a claim for cumulative error fails. *United States v. Gamory*, 635 F.3d 480, 497 (11th Cir. 2011).

Sosa argues that prejudice caused by the following alleged errors denied him a fair trial: First, the jury instructions failed to define attempt. Second, the admission of his prior convictions was unduly prejudicial. Third, the district court erred in admitting Sosa's mobile phone records because the government's late disclosure of the records violated the court's discovery order. Fourth, the district court erred in allowing lay opinion testimony. Fifth, the district court erred in denying Sosa's request for impeachment evidence and his attempt to impeach a government witness. Sixth, the government failed to disclose exculpatory evidence; and, last, the prosecutor made improper comments in closing argument

that were not supported by the evidence.  We address each argument in turn.

A. *Jury Instructions*

Sosa argues that district court failed to instruct the jury on the elements of attempted possession of cocaine with intent to distribute.  Here, however, judge did instruct the jury on all the elements of the attempted possession with intent to distribute count because she instructed that it could only find Sosa guilty if "all of the following facts are proved beyond a reasonable doubt:  First, that the defendant knowingly and intentionally attempted to possess a controlled substance as charged and, second, that the defendant attempted to possess the controlled substance with the intent to distribute it."  Although it is true, as Sosa points out, that the district court did not define attempt in its instructions, it did not have to. *See United States v. Gonzalez*, 940 F.2d 1413, 1427 (11th Cir. 1991) ("[T]erms [that] are within the common understanding of the jury need not be defined in the jury instructions.  'Attempt' is not an overly technical or ambiguous term, nor is it beyond the common understanding of the jury.").  Accordingly, we find no error in the jury instructions.

B. *Prior Convictions*

Next, Sosa argues that district court erred in admitting the records of his prior convictions because they were unduly prejudicial.  Although Sosa filed a

6

motion in limine to exclude this evidence, which the district court denied, he did not renew his objection and instead stipulated to the convictions' admission. And by stipulating to their admission, Sosa invited any error, which forecloses our review. *Baker*, 432 F.3d at 1223; *United States v. Jernigan*, 341 F.3d 1273, 1289–90 (11th Cir. 2003).

C. *Phone Records*

Sosa also argues that his mobile phone records should not have been admitted because the government did not timely disclose them to the defense. The government responds that it turned over the records as soon as it received them, a process that was delayed because Sosa's phone was registered under a fictitious name. Even assuming that the records were belatededly disclosed, Sosa would still need to establish that the late disclosure violated his substantial rights. *United States v. Bueno-Sierra*, 99 F.3d 375, 380 (11th Cir. 1996). Sosa's substantial rights would have been violated if he was unduly surprised by the late disclosure and it impacted his ability to prepare his defense. *Id.* But Sosa cannot demonstrate that he was surprised by the late disclosure of the records or that it impacted his ability to prepare his defense.

Sosa knew that government had proof of his phone calls to the other conspirators before November 3, 2009 because the government had already

7

disclosed his co-conspirators' phone records, which included calls made to and from his number. Because Sosa knew his own phone number—indeed, he stipulated it was his number—and the co-conspirators' phone records showed essentially the same evidence, that is that they had called Sosa and he had called them, he cannot demonstrate that he was surprised. Accordingly, there was no error in admitting Sosa's phone records.

D. *Lay Opinion Testimony*

Sosa next argues that the district court erred by admitting two pieces of lay opinion testimony. At trial, the government asked Garcia, Sosa's co-conspirator, who had pleaded guilty, whether he thought Sosa was at Timba's pretending to be a part of the drug deal. Garcia responded that he did not think that Sosa was pretending and that Sosa was, in fact, a part of the deal. Sosa's counsel objected, but was overruled. Sosa argues here that the district court erred in admitting this testimony because it was a lay opinion. *See* Fed. R. Evid. 701. But because Garcia's testimony was based on his own perceptions and was helpful to understanding a material fact of the case—that is whether Sosa was just in the wrong place at the wrong time, as he claimed—it was admissible.

Sosa also argues that certain statements by a DEA agent who testified at trial were inadmissible lay opinion.[1] We agree. Rule 701 permits opinion testimony from lay witnesses, but not opinion testimony that is based on specialized knowledge within the scope of Rule 702. The agent's specialized knowledge of drug dealers and their methods of operation is the type of *expert* opinion testimony that is within the scope of Rule 702. *United States v. Cross*, 928 F.2d 1030, 1050 (11th Cir. 1991) (stating federal courts have allowed experience law-enforcement officers to testify as *experts* about the modus operandi of criminal operations); *United States v. Smith*, 640 F.3d 358, 365 (D.C. Cir. 2011) (holding FBI agent's testimony on coded slang used by drug dealers is expert testimony). And because the agent here was not disclosed as an expert and his opinion testimony was outside the scope of Rule 701, the district court erred in admitting the testimony.

Sosa also argues that the district court erred by allowing the DEA agent to testify on redirect about the propensity of cooperating witnesses to the tell the truth in general. Although in most circumstances this would have been error, here it was not. *Untied States v. Sorondo*, 845 F.2d 945, 949 (11th Cir. 1988) (stating

---

[1] Sosa did not object to this testimony at trial so we review for plain error. *United States v. Sorondo*, 845 F.2d 945, 948 (11th Cir. 1988).

that testimony that encourages the jury to substitute its judgment with that of another should not be admitted).  Here, however, Sosa opened the door to the testimony because he attacked the credibility of cooperating witnesses during his cross-examination of the DEA agent.  *Cf.  United States v. Elliott*, 849 F.2d 554, 559 (11th Cir. 1988).

But we conclude that the district court's error was harmless given the strength of the other evidence against Sosa.  *United States v. Phaknikone*, 605 F.3d 1099, 1109 (11th Cir. 2010).

E.  *Impeachment Evidence, and* Brady *and* Giglio *Materials*

Sosa next argues that the district court erred by limiting his ability to impeach his co-conspirator, Garcia.  Specifically, Sosa claims the district court erred by excluding an order from Garcia's post-conviction challenge to an earlier conviction that commented on Garcia's testimony on behalf of his wife in a related trial.  Sosa also argues that the district court erred in denying his motion for discovery related to Garcia's expectation of a sentencing reduction.

We conclude that the district court did not err in excluding the order from Garcia's post-conviction proceeding because it was "probative only of the witness'[s] generally propensity for truthfulness."  *United States v. Calle*, 822 F.2d 1016, 1021 (11th Cir. 2001).

10

Although it could have been error for the district court to deny Sosa's motion for additional discovery on the grounds that the motion did not comply with the district court's local rules, *see* Fed. R. Crim. P. 57(a)(2), we find no error here because the district court's order did not cause Sosa to lose any rights. First we note that the government was already under an obligation to produce any sentencing reduction agreement under the district court's standing discovery order, the Federal Rules of Criminal Procedure, and *Giglio* itself,[2] and thus were not relieved of any obligation to produce any such material material. Second, Sosa has not established a *Giglio* violation. Sosa argues that the government agreed to file for a sentence reduction on behalf of Garcia, in exchange for his testimony against Sosa, simply because the government did file a motion to reduce Garcia's sentence after Sosa's trial. The government contends that no such agreement exists, and we cannot accept Sosa's assertion without more.

F. *Prosecutorial Misconduct*

Finally, Sosa argues that the government made three improper statements during its closing arguments. In order to prevail on such an argument, Sosa would need to prove that the government's remarks were improper and that the remarks

---

[2] Under *Giglio v. United States*, 405 U.S. 150 (1972), the government is obligated to turn over to the defense any material evidence that could be used to impeach government witnesses. *United States v. Jordan*, 316 F.3d 1215, 1226 n.16 (11th Cir. 2003).

prejudicially affected his substantial rights. *United States v. Eckhardt*, 466 F.3d 938, 947 (11th Cir. 2006).

Sosa did not object to any of these statements then, but now contends that the government improperly argued (1) that he possessed the sham cocaine when it was put on the table where he was sitting, (2) that he was involved in the conspiracy before November 3, 2009; and (3) referred to his prior convictions. We address each argument in turn.

First we note that government's remarks about Sosa's constructive possession of the cocaine were not improper. Constructive possession is sufficient to sustain a conviction for possession. *United States v. Faust*, 466 F.3d 1342, 1345 (11th Cir. 2006). Although Sosa never possessed any actual cocaine, constructively or actively, the government was entitled to argue that his constructive possession of the sham cocaine was a substantial step towards attempted possession. *United States v. McDowell*, 250 F.3d 1354, 1365 (11th Cir. 2001). Accordingly, we conclude that the prosecutor's argument was proper.

We now turn to the government's argument that the jurors could infer from the many phone calls between Garcia and Sosa before November 3, 2009 that Sosa was involved in the conspiracy before November 3. It is error for the government to argue facts that are not in evidence or misstate evidence. *United States v.*

12

*Sarimiento*, 744 F.3d 755, 764 (11th Cir. 1984). But here the government did neither. First, Garcia's testimony is not clear about when he first spoke to Sosa about the possibility of a drug deal. And the questions that the government and Sosa's defense counsel asked him do not make that clear either. Given the volume of the phone calls between the two men in the days leading up to the attempted drug deal, and Garcia's testimony about Sosa's knowledge of the conspiracy, it would be reasonable to infer that Sosa participated in the conspiracy before November 3, and as such the prosecution was free to make the argument. *United States v. Kopituk*, 690 F.2d 1298, 1342 (11th Cir. 1982).

We now address the prosecution's reference to Sosa's prior convictions during closing argument. Had the prosecutor argued that Sosa's prior convictions were substantive evidence of his guilt, that would have been improper. *United States v. DeLoach*, 34 F.3d 1001, 1004 (11th Cir. 1994). But here the prosecutor referred to Sosa's prior convictions not to suggest his propensity for criminal activity, but, as he explained, to refute his argument that his presence at Timba's during the drug deal was accidental. Accordingly, the argument was not improper. *Id.*

Because we conclude that the only error Sosa has identified is the admission of the DEA agent's expert testimony without proper notice, his cumulative error claim fails. *Gamory*, 635 F.3d at 497.

## IV.

We review a district court's decision not to hold an evidentiary hearing on a motion for a new trial for abuse of discretion. *United States v. Sweat*, 555 F.3d 1364, 1368 (11th Cir. 2009) (citing *United States v. Massey*, 89 F.3d 1433, 1443 (11th Cir. 1996)). Sosa's motion for a new trial was based on his claims that the government violated *Brady* and *Giglio*, as well as the court's discovery orders. He also asserts that the government failed to disclose an agreement it had with a witness that the witness would not testify against Sosa. But because Sosa has failed to produce any evidence to support these claims, we conclude that the district court did not abuse its discretion in denying his motion for an evidentiary hearing. *See United States v. Venske*, 296 F.3d 1284, 1292 (11th Cir. 2002).

## V.

We now address the district court's calculation of the sentencing guidelines, which we review *de novo*. *United States v. DeVegter*, 439 F.3d 1299, 1303 (11th Cir. 2006).

Sosa argues that district court improperly sentenced him as a career offender under Sentencing Guideline § 4B1.1 because the statutory maximum term of imprisonment he faced was 40 years based on the district court's finding that he could only be held accountable for conspiring to possess with intent to distribute 2 kilograms of cocaine.

Under § 4B1.1 a defendant who has at least two prior felony convictions for crimes of violence or controlled substance offenses may be classified as a career offender if he is convicted of a third felony crime of violence or controlled substance offense and was at least eighteen when he committed the third offense. If a defendant is classified as such, his offense level is determined by the statutory maximum for that last conviction. If the statutory maximum is life imprisonment, a defendant is assigned an offense level of 37. If the statutory maximum is 25 years' or more imprisonment, the defendant is given an offense level of 34.

Sosa argues that the district court improperly counted his 1987 controlled substance offense convictions as prior convictions under the career offender guideline. Sosa's sentence on those charges was 25 years' imprisonment. In order to count as a prior conviction under the career offender guideline, the earlier offense must have resulted in a sentence of over a year and a day, and it either must have been committed within 15 years of the instant offense, or the term of

imprisonment must have ended within fifteen years of the instant offense. *See* U.S.S.G. §§ 4A1.2(e)(1), 4B1.2(c). Because Sosa's imprisonment was greater than a year and a day and ended only a little over a year before he committed this offense, his 1987 convictions were properly counted in applying the career offender guideline.

Sosa also argues that his offense level should have been 34 because the statutory maximum penalty he faced was 40 years' imprisonment. But Sosa actually faced a statutory maximum of life imprisonment, even with the drug quantity the district court held him accountable for, because he had a prior felony drug conviction. See 21 U.S.C. § 841(b)(1)(B) ("If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than 10 years and *not more than life imprisonment. . . .*") (emphasis added). Accordingly, the district court properly classified Sosa as a career offender.

**AFFIRMED.**