# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued November 2, 2011　　　　Decided December 9, 2011

No. 10-3043

UNITED STATES OF AMERICA,
APPELLEE

v.

LEONEL RENE GUERRERO,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:08-cr-00347-1)

*Robert A. Sheffield*, appointed by the court, argued the cause for appellant. With him on the briefs was *Douglas J. Behr*. *A. J. Kramer*, Federal Public Defender, entered an appearance.

*Stratton C. Strand*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief was *Ronald C. Machen Jr.*, U.S. Attorney, and *Roy W. McLeese III* and *Elizabeth Trosman*, Assistant U.S. Attorneys.

Before: ROGERS and KAVANAUGH, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: Claiming trial evidentiary errors, appellant Leonel Rene Guerrero seeks reversal of his conviction by a jury for unlawful possession with intent to distribute cocaine and aiding and abetting. His principal contention is that the district court plainly erred in allowing a law enforcement officer to offer lay opinion testimony pursuant to Federal Rule of Evidence 701 about the drug-trafficking significance of items seized from his bedroom and that to the extent the officer's opinion testimony was admissible he first had to be qualified as an expert pursuant to Federal Rule of Evidence 702. Because appellant elicited testimony concerning the officer's law enforcement experience with drug trafficking in an attempt to demonstrate he was conditioned to see the benign items seized from appellant's bedroom as drug paraphernalia, and elicited his opinion regarding one of those items, appellant fails to show prejudice even assuming the testimony was improperly admitted. Circuit precedent confirms his other contentions are without merit. The district court neither abused its discretion in excluding expert evidence on the ultimate question in the case, nor erred in allowing the prosecutor to ask guilt-assuming hypothetical questions of a character witness testifying about her personal opinion. Accordingly, we affirm the judgment of conviction.

## I.

On October 17, 2008, appellant accepted delivery at his house of a package that was shipped from El Salvador and addressed to Carlos Lopez. Inside the package was a gold statue containing 302.6 grams of cocaine. Law enforcement officials had intercepted the package upon its arrival in the United States and installed a trip wire to signal when the package was opened. When the wire was tripped thirty minutes after appellant accepted the package, law enforcement officers, including Special Agents from Immigration and Customs Enforcement,

were admitted into the house, upon identifying themselves, by two women. In the basement, the agents found appellant poised to exit into the backyard and Jose Luis Sacreas as well as a third man and the opened package. The agents searched the house. Special Agent Drewniak seized a number of items from appellant's bedroom on the second floor: two coffee grinders, a digital scale, a small white ceramic bowl, a small white spoon, a jar of creatine, cotton gloves, small plastic baggies, and $707 in cash; the coffee grinders and the scale contained white residue later identified as a mixture of cocaine and lidocaine. Appellant and Sacreas were indicted for unlawful possession with intent to distribute cocaine, 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and aiding and abetting, 18 U.S.C. § 2.

Agent Drewniak, along with three other Special Agents who participated in the controlled delivery of the package, testified at trial. Drewniak testified on direct examination that the items seized from appellant's bedroom were "consistent with narcotics distribution activity." Tr. 5/19/09 at 116. He explained that "typically" coffee grinders are used to mix cutting agents such as creatine with pure cocaine, small bowls are used to hold small amounts of cocaine, small spoons are used to scoop and move small quantities of cocaine, scales are used to measure small quantities of cocaine, gloves are used to keep cocaine from being absorbed into the skin, and small baggies are used to package cocaine for sale. Tr. 5/19/09 at 116, 119, 120–23, 125; Tr. 5/20/09 at 6. On cross examination, appellant, through counsel, questioned Drewniak about the extent of his law enforcement experience and training, prompting him to testify that he had been trained to conduct surveillance, search a crime scene, interview witnesses, conduct a through investigation and had "conducted numerous controlled deliveries" of unlawful drugs. Tr. 5/20/09 at 15. Counsel also inquired, "What is the significance of this little plate, the drug significance?" and Drewniak testified that "in the drug distribution enterprises

typically small bowls and small plates are utilized in a fashion to mix pure cocaine that is imported into the country with diluting agents such as benzocaine or creatine." Tr. 5/20/09 at 25.

Other government witnesses included forensic chemists from the Drug Enforcement Administration. These chemists testified that they had found cocaine on the grinders and scale and that creatine is a cutting agent often mixed with pure cocaine to add bulk and dilute the cocaine. Two of appellant's superiors at the Washington Hilton Hotel testified that appellant's job as a steward involved pushing large carts of soiled dishware that he washed in a dishwasher, that he had no problem doing any facet of his job, and that he was among the hotel's best stewards and would supervise anywhere between two to fifteen employees on weekends.

In defense, appellant presented the testimony of his wife and an expert witness as well as a coworker and a neighbor. His wife testified they had bought the house in 2001, and she had lived there until June 2008 when she and their children moved to Maryland. Sometime after June 2008, appellant began renting out rooms in the house and there were nine tenants at the time appellant was arrested. She recognized the items seized from appellant's bedroom, explaining that she had used the creatine to build muscle so she might more easily lift beds in her work as a housekeeper, the scale to weigh gold jewelry that she purchased in Peru and sold during the holidays, the coffee grinders to grind coffee, and the spoon to feed her small children. Appellant wore the cotton gloves at work to hold hot plates and used the baggies to carry his medicine to work. On cross-examination she acknowledged that the seized baggies were smaller than those she bought for carrying appellant's medicine and that she did not know how the coffee grinders and scale came to have cocaine residue on them.

Dr. Stephen J. Feinberg, an optometrist specializing in low vision, testified that he had examined appellant and reviewed his medical records and concluded that there is "no normal . . . architecture, in the retina of [appellant's] eyes," his "peripheral vision is not very good; his central vision . . . is nonexistent," and his vision is twelve times worse than that needed to qualify as legally blind even with corrective lenses. Tr. 5/21/09 at 50, 54. Although appellant could identify the denomination of paper currency by holding it within five inches of his eyes, he would have difficulty distinguishing white powder on a white surface.

Appellant's co-worker testified that he realized from the first day that he met appellant over a decade ago that "he could not see properly," Tr. 5/20/09 at 163, and that he knew appellant to be a law-abiding person. His next-door neighbor testified that she was aware appellant had trouble with his eyesight, she would drive him to and from work three or four times a week, and knew him to be a law-abiding person. When asked on cross examination whether her opinion would change if told that appellant had been charged with unlawful possession with intent to distribute cocaine and had the items necessary to prepare and package cocaine for sale in his bedroom, she testified her opinion would not change because she did not believe that appellant was guilty.

The jury found appellant guilty and the district court sentenced him to time served and 36 months supervised release. Appellant appeals.

## II.

Federal Rule of Evidence 701, "Opinion Testimony by Lay Witnesses," provides:

> If the witness is not testifying as an expert the witness'

testimony in the form of opinions or inferences is limited to those opinions or inference which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of [Federal] Rule [of Evidence] 702.[1]

These rules are designed to draw a distinction between lay and expert testimony and to ensure that any testimony "based on scientific, technical, or other specialized knowledge" is "scrutinized under the rules regulating expert opinion." FED. R. EVID. 701, 2000 amendment advisory committee note. Proper lay opinion testimony is not based on specialized knowledge and is "the product of reasoning processes familiar to the average person in everyday life." *United States v. Wilson*, 605 F.3d 985, 1025 (D.C. Cir. 2010) (quoting *United States v. Garcia*, 413 F.3d 201, 215 (2d Cir. 2005)).

Appellant contends that Special Agent Drewniak's lay opinion testimony about the drug-trafficking significance of the items seized from his bedroom was improper lay opinion

---

[1] Federal Rule of Evidence 702, "Testimony by Experts," provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

testimony under FED. R. EVID.701 for three reasons: (1) his opinions were not limited to those rationally based on his firsthand experience of searching appellant's bedroom; (2) his opinion testimony merely told the jury that he believed appellant was selling cocaine and, therefore, was not helpful to the jury; and (3) to the extent there was a basis for admission of his opinion testimony, it was due to knowledge of the *modus operandi* of cocaine dealers, specialized knowledge which falls within the scope of FED. R. EVID.702. Because appellant did not object at trial to the admission of Drewniak's opinion testimony, our review is for plain error, *see United States v. Weaver*, 281 F.3d 228, 231 (D.C. Cir. 2002), and appellant must show there is error that is clear or obvious, and the error affected his substantial rights, which in the ordinary case means it affected the outcome of the trial, and the error seriously affects the fairness, integrity, or public reputation of judicial proceedings, *see United States v. Marcus*, 130 S. Ct. 2159, 2164 (2010); *United States v. Olano*, 507 U.S. 725, 731 (1993).

At the time of appellant's trial, this court had held that "[t]he operations of narcotics dealers" are "a suitable topic for expert testimony because they are not within the common knowledge of the average juror." *United States v. Boney*, 977 F.2d 624, 628 (D.C. Cir. 1992); *see also United States v. Dunn*, 846 F.2d 761, 763 (D.C. Cir. 1988). Since appellant's trial, the court has clarified that a witness may testify as to the typical characteristics of drug trafficking operations only if first qualified as an expert pursuant to FED. R. EVID.702. *See Wilson*, 605 F.3d at 1026; *United States v. Smith*, 640 F.3d 358, 365 (D.C. Cir. 2011). The government maintains that because FED. R. EVID.702 imposes "no . . . procedural requirements," FED. R. EVID. 702, 2000 amendment advisory committee note, and a district court has "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable," *Kumho Tire Co. v. Carmichael*, 526 U.S.

137, 152 (1999), it was permissible for the district court to allow Drewniak to offer expert opinion testimony after listening to his testimony describing his law enforcement experience. Perhaps, but it is unnecessary to decide this question because, assuming error, it did not affect the outcome of appellant's trial.

Appellant's defense was that he did not have the visual capacity to participate in a drug trafficking operation by cutting, weighing, and packaging cocaine for sale. Defense counsel theorized in opening and closing argument to the jury that Sacreas, the basement tenant, had used the scale and coffee grinders to prepare cocaine for distribution, without appellant's knowledge, and stored the items in appellant's unlocked bedroom. Part and parcel of this defense was that the Special Agents who executed the controlled delivery were biased, having been conditioned as a result of their law enforcement experience and training to view the seized items, which have many possible benign uses, as drug paraphernalia. Appellant now urges that without Drewniak's inadmissible lay opinion testimony linking the items from appellant's bedroom to cocaine distribution there is a reasonable probability that the government would not have met its burden of proof as to his intent to distribute cocaine. Yet defense counsel conceded that all four Special Agents were experienced law enforcement officers in drug trafficking and treated Drewniak as an expert in drug trafficking operations. Tellingly, appellant offers no response in his Reply Brief.

Consequently, assuming Drewniak's lay opinion testimony was improperly admitted pursuant to FED. R. EVID. 701, appellant fails to show that the error affected his substantial rights by affecting the outcome of his trial, *see United States v. Ramsey*, 165 F.3d 980, 984 (D.C. Cir. 1999), or adversely affected the fairness, integrity, or public reputation of the judicial proceedings.

**III.**

Rule 704 of the Federal Rules of Evidence, "Opinion on Ultimate Issue," provides that "[n]o expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto." Appellant contends that the district court abused its discretion in excluding the expert evidence of an optometrist specializing in low vision that appellant lacked the visual ability to perform the activities underlying the charges. He maintains this evidence was relevant, had an adequate basis in fact, and addressed the issue of his capacity to use the seized items in his bedroom to prepare and package cocaine for sale, an issue "quite apart" from whether he possessed a particular mental state. Appellant's Br. 36.

Prior to Dr. Feinberg's testimony, the district court ruled that Dr. Feinberg's written report, which included the statement "I do not believe Mr. Guerrero has the visual ability to perform the activities for which he's been charged," would not be admitted. Tr. 5/21/09 at 42 (quoting Dr. Stephen J. Feinberg's Expert Report). The district court ruled, rather, that Dr. Feinberg could testify about what appellant "can see, what he could see in October 2008, what he could do." *Id*. at 41. Consistent with these rulings, the district court allowed Dr. Feinberg to answer the only two questions defense counsel asked relating to appellant's ability to use the items seized from his bedroom to prepare and package cocaine for sale:

> [DEFENSE COUNSEL]: Would it be easy for Mr. Guerrero to see a white powder on a silver table top?
> [PROSECUTOR]: Objection, Your Honor.
> [DEFENSE COUNSEL]: Based on your examination of

> him and your knowledge of his visual acuity?
>
> [DR. FEINBERG]: I would think it highly unlikely that he would discern powder on a silver or white surface.
>
> [DEFENSE COUNSEL]: Based on your examination of him, would it be easier for him to see something blue on a white surface than a clear plastic bag?
>
> [PROSECUTOR]: Objection, Judge.
>
> [THE COURT]: I'll allow it.
>
> [DR. FEINBERG]: Well, the answer would be yes, because I tend to harp on contrast. If I have family members present, somebody with these kinds of issues, I talk about contrast if they're going to function with some sense of normalcy.

*Id*. at 59–60.

In *United States v. Salamanca*, 990 F.2d 629 (D.C. Cir. 1993), the issue was whether the district court had erred in ruling that a psychologist could not testify whether the defendant had the capacity to have the mental state necessary for guilt. The charges against Salamanca included attempting to kill a law enforcement officer. At trial, the psychologist was permitted to testify that in his opinion Salamanca suffered from "diffused brain damage" consistent with alcohol abuse and that if a person with this condition drank as much alcohol as Salamanca did on the evening of the assault that person would have a diminished capacity to think and plan. *Id*. at 636. This court rejected the argument that the psychologist also should have been allowed to testify as to "whether [Salamanca] had the ability and capacity to plan an attack . . . under the circumstances," *id*., holding that the district court had "correctly restricted the scope of the expert testimony, disallowing questions as to 'the ultimate fact,' and providing leeway for [Salamanca] to elicit the witness's opinion about the capacities of a person of his purported mental condition who had consumed the quantity of beer [Salamanca] allegedly

drank on the night of the assault," *id*. at 637.

Likewise here, the district court properly excluded Dr. Feinberg's opinion on the ultimate question of appellant's guilt or innocence, *see* FED. R. EVID. 704, and afforded defense counsel leeway to establish appellant's inability to see and perform activities underlying the charged offenses. Appellant's insistence that he was prejudiced because the excluded evidence would have responded directly to Agent Drewniak's lay opinion testimony and informed the jury about what appellant could see ignores Dr. Feinberg's considerable testimony about appellant's poor vision, including that his vision was twelve times worse than someone who was legally blind. Indeed, defense counsel relied on his testimony in arguing to the jury in closing that appellant could "absolutely not" see well enough to prepare and package cocaine for sale. Tr. 5/21/09 at 102. Because the defense was allowed to present expert testimony that addressed appellant's visual limitations, the district court's rulings were not an abuse of discretion. *See United States v. Smart*, 98 F.3d 1379, 1386 (D.C. Cir. 1996).

## IV.

Federal Rule of Evidence 405 permits cross examination of a character witness only as to "relevant specific instances of conduct." Appellant contends guilt-assuming hypothetical questions, by their nature, do not concern specific instances of conduct and the district court plainly abused its discretion in permitting the prosecutor to ask guilt-assuming hypothetical questions of appellant's neighbor. The prosecutor asked the neighbor whether her opinion of appellant would change "knowing the . . . charge is possession with intent to distribute cocaine," that items seized from appellant's bedroom (two coffee grinders with cocaine residue, a digital scale, and plastic baggies) were used for distributing cocaine, and that he had

"received . . . a gold statue laden with over 300 grams of cocaine" on the day he was arrested. Tr. 5/20/09 at 183-84. To the extent the presence of the items and appellant's receipt of the statue were undisputed, it may be that these questions were not guilt assuming. *Compare United States v. Guzman*, 167 F.3d 1350, 1352 (11th Cir. 1999); *United States v. Williams*, 738 F.2d 172, 177 (7th Cir. 1984); *United States v. Mason*, 993 F.2d 406, 408 (4th Cir. 1993), *with United States v. Smith-Bowman*, 76 F.3d 634, 636 (5th Cir. 1996); *United States v. Velasquez*, 980 F.2d 1275, 1277 (9th Cir. 1992). We need not decide because even if the questions were guilt-assuming, appellant cannot show error, much less plain error.

In *United States v. White*, 887 F.2d 267 (D.C. Cir. 1989), the court held that "[c]ross-examination of witnesses who testify only to the defendant's community reputation with hypotheticals assuming guilt may be improper," but that "similar cross-examination of witnesses who -- as the witness did here -- give their own opinion of the defendant's character is not error." *Id*. at 274–75 (citations omitted); *see United States v. Kellogg*, 510 F.3d 188, 193-97 (3d Cir. 2007). Appellant's neighbor testified about her personal opinion of appellant's character, not his reputation in the community. Appellant acknowledges *White*, but maintains it was wrongly decided, an argument that can only be entertained by the *en banc* court. *See LaShawn A. v. Barry*, 87 F.3d 1389, 1395 (D.C. Cir. 1996).

Accordingly, because appellant fails to show plain error or an abuse of discretion by the district court, we affirm the judgment of conviction.