# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued November 16, 2010      Decided April 15, 2011

No. 09-3119

UNITED STATES OF AMERICA,
APPELLEE

v.

JOHN SMITH,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:07-cr-00153)

*Mariel Goetz* argued the cause for appellant. With her on the briefs were *Peter M. Brody*, appointed by the court, *Stephen L. Braga*, and *Michael S. Casey*.

*Patricia A. Heffernan*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were *Ronald C. Machen, Jr.*, U.S. Attorney, and *Roy W. McLeese III*, *Elizabeth Trosman*, and *John K. Han*, Assistant U.S. Attorneys.

Before: SENTELLE, *Chief Judge*, and GINSBURG and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* KAVANAUGH.

KAVANAUGH, *Circuit Judge*: Based on evidence of John Smith's drug dealing, federal agents obtained a search warrant for Smith's home. There, they found Smith along with heroin worth about $30,000, two loaded guns, and $27,730 in cash. The agents arrested Smith, and a jury later convicted him of four drug and firearm offenses. The District Court sentenced Smith to 25 years in prison, the mandatory minimum sentence given his offenses and criminal record.

On appeal, Smith contends that several errors occurred in the course of the trial and sentencing proceedings. *First*, at trial, the Government proved Smith's prior felony conviction – which was relevant to the charge of being a felon in possession of a firearm – through letters from a state court clerk, rather than through a certified record or in-court testimony. According to Smith, the clerk's letters were testimonial, yet the clerk was not subject to cross-examination. Smith says that admission of the clerk's letters therefore violated the Sixth Amendment's Confrontation Clause. *Second*, an FBI agent testified as a lay witness about the meaning of slang used by Smith and his co-conspirators in some recorded conversations. Smith claims that the agent's testimony about the slang had to satisfy the requirements for expert testimony and thus was improperly admitted as lay testimony. *Third*, the FBI agent testified at the start of trial that Smith and a co-conspirator were "working together putting their money together and going to New York to buy heroin." Smith contends that the agent's overview testimony was based on inadmissible hearsay and thus improper. *Fourth*, at trial, a police officer testified that he had once pulled over Smith at a traffic stop and found a gun in Smith's car, as well as "two large bundles" near the gun. Smith

objected to the reference to "bundles," and the District Court sustained Smith's objection and told the jury that "[w]e are going to just talk about this weapon that was allegedly found in the car. Nothing else." Smith says the judge should have instructed the jury to disregard the reference to the bundles. *Fifth*, at sentencing, the judge found that Smith had a prior drug conviction and relied on that prior conviction to double Smith's mandatory minimum sentence for the conspiracy charge from 10 to 20 years. Smith argues that the judge's finding violated Smith's Sixth Amendment right to have a jury find that fact.

Based on recent Supreme Court decisions, we agree with Smith's Confrontation Clause challenge to admission of the clerk's letters. We thus vacate the judgment of conviction on the felon-in-possession count, which depended on that evidence. That error does not affect the other three counts of conviction, however. We also agree with Smith's claim that the FBI agent's interpretation of slang was admissible only as expert testimony; however, that error was harmless. The witness would have qualified as an expert and offered the same testimony. We disagree with Smith's other three arguments. The FBI agent's objected-to testimony at the beginning of the trial was not based on hearsay and thus was not improper. The District Court sufficiently instructed the jury to disregard the police officer's reference to "bundles" in Smith's car. And the judge's finding about Smith's prior drug conviction did not violate the Sixth Amendment.

We therefore affirm in part, vacate in part, and remand. The vacatur and remand of the felon-in-possession count does not affect Smith's term of imprisonment: Smith's sentence for the felon-in-possession count runs concurrently with the mandatory minimum sentence of 25 years for the counts of conviction that are affirmed.

I

Sometime in February 2007, John Smith answered his phone to hear Lonnell Glover's familiar voice. They discussed their heroin supplier in New York – "Twin" – and Smith's plan to buy heroin from Twin later in the month. They did not know that FBI Special Agent John Bevington was investigating their drug distribution ring and employing court-approved electronic surveillance to listen to Glover's phone conversations. Agent Bevington could hear every word they said.

Over the next few months, Smith and Glover talked frequently. Sometimes they discussed how much heroin they would buy from Twin. Other times, Smith passed on messages from Twin. On occasion, Smith told Glover where he expected to sell heroin. When Glover needed directions to a meeting with Twin, Smith provided them. When a guest in Smith's home saw police officers outside and flushed Smith's heroin down the toilet, Smith colorfully vented his frustration to Glover about seeing his profits literally go down the drain.

The two drug dealers apparently worked together well until June 19, 2007. On that day, the FBI simultaneously executed 17 search warrants and made about 20 arrests during a take-down of Smith and Glover's heroin distribution ring. Smith was alone in his home at 6:00 a.m. when agents came in, searched his house, and arrested him. In Smith's bedroom, the FBI found 316 grams of heroin valued at more than $30,000, two loaded guns, and $27,730 in cash.

Smith was later indicted for being a felon in possession of a firearm; conspiring to possess and distribute heroin; possessing heroin with intent to distribute it; and possessing a

gun during a drug offense. *See* 18 U.S.C. § 922(g)(1) (felon in possession); 21 U.S.C. § 846 (conspiracy); 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(i) (possession with intent to distribute); 18 U.S.C. § 924(c)(1)(A) (using firearm during drug crime).

At trial, the Government introduced redacted versions of two letters to help prove the charge of being a felon in possession of a firearm. At the request of the Department of Justice, a clerk in the Supreme Court of New York, Queens County, had created the documents shortly before trial. Each letter stated that John Smith had been convicted of a felony. The District Court admitted the letters into evidence over Smith's Confrontation Clause objection.

FBI Agent Bevington testified as a lay witness at the trial. Agent Bevington said he had listened to thousands of Glover's recorded conversations, many of which involved Smith. Based on his experience investigating drug crimes, Agent Bevington told the jury the meaning of several terms in the recorded conversations, such as "key" (kilogram), "hardball" (100 grams of heroin), and "dope" (heroin). Smith objected before trial to the agent's interpretation testimony, and argued that Bevington could offer such testimony only if qualified as an expert witness. The District Court ruled otherwise.

During his testimony, Agent Bevington also stated over Smith's objection that "Mr. Smith and Mr. Glover were working together putting their money together and going to New York to buy heroin." Smith contended this was improper overview testimony; the District Court disagreed.

Later in the trial, the jury heard testimony from Joseph Bellino, a former police officer with the United States Park

Police. He described a traffic stop in 2004 in which he searched Smith's car and found a gun and "two large bundles" near the gun. Smith immediately objected to the reference to "bundles." The District Court sustained the objection and told the jury, "We are going to just talk about this weapon that was allegedly found in the car. Nothing else."

The jury found Smith guilty on all four counts. For the conspiracy charge, the court imposed the mandatory minimum sentence of 20 years in prison. The mandatory for that offense would have been 10 years, but a judicial finding that Smith had previously been convicted of a drug felony increased it to 20 years. The District Court then imposed two sentences to be served concurrently with that 20-year sentence: a 10-year sentence for unlawful possession with intent to distribute more than 100 grams of heroin, and a 10-year sentence for being a felon in possession of a firearm. Finally, the District Court imposed a 5-year mandatory minimum sentence – which the law required to be served consecutively – for using, carrying, or possessing a firearm during and in relation to a drug trafficking offense. *See* 21 U.S.C. § 846 (conspiracy); 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(i) (possession with intent to distribute); 18 U.S.C. § 922(g)(1) (felon in possession); 18 U.S.C. § 924(c)(1)(A) (using firearm during drug crime). In all, therefore, Smith was sentenced to 25 years in prison.

II

A

Smith raises a Confrontation Clause challenge to his conviction for being a felon in possession of a firearm.

To prove the felon-in-possession charge, the Government was required to prove that Smith had a prior felony conviction. The Government did so by producing letters from a court clerk in the Supreme Court of New York, Queens County. The letters stated that "it appears from an examination of the records on file in this office" that Smith had been convicted of a felony. Each letter had a seal and a signature by a court clerk. The court clerk did not testify at Smith's trial, however.

On appeal, Smith renews his trial objection that admission of the clerk's letters into evidence – without an opportunity for Smith to cross-examine the clerk – violated the Confrontation Clause of the Sixth Amendment. That Clause guarantees every criminal defendant the right "to be confronted with the witnesses against him." The Supreme Court recently reaffirmed that a "witness's testimony against a defendant is . . . inadmissible unless the witness appears at trial or, if the witness is unavailable, the defendant had a prior opportunity for cross-examination." *Melendez-Diaz v. Massachusetts*, 129 S. Ct. 2527, 2531 (2009).

Often, the key Confrontation Clause question is whether the statement or document is "testimonial." In *Melendez-Diaz*, the Court considered a laboratory report that said a substance seized by police was cocaine. The Court concluded that the laboratory report constituted a "witness's testimony" – that is, the document was "testimonial." The Court reasoned that the report was a "solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Id.* at 2532. In addition, the report was made "under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Id.*

The *Melendez-Diaz* rule governing reports of this kind contains a "narrowly circumscribed" exception for "a clerk's certificate authenticating an official record." *Id.* at 2538-39. A clerk is "permitted to certify to the correctness of a copy of a record kept in his office, but [has] no authority to furnish, as evidence for the trial of a lawsuit, his interpretation of what the record contains or shows, or to certify to its substance or effect." *Id.* at 2539 (internal quotation marks omitted). As the Court also put it, a "clerk could by affidavit *authenticate* or provide a copy of an otherwise admissible record, but could not do what the analysts did here: *create* a record for the sole purpose of providing evidence against a defendant." *Id.* The Court then elaborated on the distinction between creating a record for use at trial and creating business and public records:

> Business and public records are generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because – having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial – they are not testimonial. Whether or not they qualify as business or official records, the analysts' statements here – *prepared specifically for use at petitioner's trial* – were testimony against petitioner, and the analysts were subject to confrontation under the Sixth Amendment.

*Id.* at 2539-40 (emphasis added).

In this case, the letters from the New York state court clerk describing Smith's prior convictions were created at the request of the Department of Justice shortly before Smith's trial. The clerk's letters were "made for the purpose of establishing or proving" a fact at trial. *Id.* at 2532. For

Confrontation Clause purposes, they are not the same as an authenticated copy of an official record of conviction. These letters were created under circumstances "functionally identical to live, in-court testimony, doing precisely what a witness does on direct examination" by the Government – namely, responding to a prosecutor's question with an answer. *Id.* (internal quotation marks omitted). In our judgment, the clerk's letters thus fall clearly on the "testimonial" side of the Confrontation Clause line drawn in *Melendez-Diaz*, not within the "narrowly circumscribed" exception for official records.

Because the clerk's letters were testimonial, their admission into evidence at Smith's trial – without an opportunity for Smith to cross-examine the clerk – violated the Confrontation Clause.[1] The Government presented no evidence other than the clerk's letters to show that Smith was a felon in possession of a firearm. Therefore, we vacate Smith's conviction on that count.

The Confrontation Clause error does not affect the other three counts of Smith's conviction – the charges for heroin conspiracy, heroin possession, and possessing a gun during a drug crime. The evidence of Smith's prior state-court convictions was not necessary to, nor introduced for the purpose of proving, the prosecution's case against Smith on those other three counts.

Smith argues that the taint or prejudice from the erroneously admitted prior New York convictions spilled over to the other three counts in this case. Given the facts and

---

[1] We note that the trial in this case occurred before the Supreme Court's decision in *Melendez-Diaz*. The District Court's ruling on this issue thus was made before and without the benefit of that dispositive Supreme Court decision.

circumstances of this case, we disagree. The clerk's letters were redacted and did not indicate the nature of Smith's prior offenses. That minimized any prejudice. Moreover, the prior convictions were not introduced to prove the other three counts against Smith, and the evidence on those other counts was overwhelming. That evidence included (but was not limited to) many recordings of phone calls between Smith and Glover in which they discussed their drug distribution ring; Smith's recorded description of his guest flushing his drugs down the toilet; and the 316 grams of heroin, two loaded firearms, and $27,730 in cash seized from Smith's bedroom when he was home alone. The Confrontation Clause violation was thus "harmless beyond a reasonable doubt" as to the other three counts of conviction. *United States v. Wilson*, 605 F.3d 985, 1014 (D.C. Cir. 2010); *see generally Chapman v. California*, 386 U.S. 18, 23-24 (1967); *see also Prophet v. Duckworth*, 580 F.2d 926, 927 (7th Cir. 1978) (under *Chapman*, "the error would be harmless if . . . because of the overwhelming nature of the evidence against him, the jury could not have reasonably reached a different verdict even if the prior conviction were not used"); *United States v. Greene*, 578 F.2d 648, 653-54 (5th Cir. 1978) ("even if the reference to the prior offenses in closing argument was improper . . . . the prejudicial effect, if any, of the comments was slight in relation to the overwhelming evidence of guilt," and under *Chapman*, "any impropriety was harmless beyond a reasonable doubt"); *Bates v. Nelson*, 485 F.2d 90, 95-96 (9th Cir. 1973) ("In view of the overwhelming evidence . . . we find that any error in the admission of priors or use of them during the trial was harmless beyond a reasonable doubt within the meaning of *Chapman* . . . .").

To sum up on the Confrontation Clause issue, we find error and vacate the judgment with regard to the felon-in-

possession conviction but not the other three counts of conviction.

B

At trial, FBI Agent Bevington testified about his understanding of certain slang that was used by Smith, Glover, and others in recorded telephone conversations – words such as dope, key, and hardball. Bevington testified as a lay witness under Federal Rule of Evidence 701. Smith claims that the FBI agent's testimony necessarily constituted expert testimony and thus should not have been allowed as lay opinion testimony.

Bevington interpreted the slang terms based on his experience investigating drug crimes. For example, he stated: "I don't know that it's common knowledge in the general public, but in drug circles it's well known that if you're referring to dope, you're talking about heroin and not cocaine or some other drug."

Rule 701 of the Federal Rules of Evidence limits a lay witness's opinions or inferences to those "(a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Rule 702 governs testimony from expert witnesses – those who testify based on scientific, technical, or specialized knowledge in a field of expertise. The party wishing to use an expert witness must first establish the witness's "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. The witness may offer expert testimony only if the trial judge finds that the witness's qualifications and methods make his

opinions "reliable." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993).

Smith argues that Agent Bevington's interpretation of drug dealers' slang was not admissible under Rule 701 as lay testimony because it was based on "specialized knowledge" Bevington gained from working on other drug investigations. Based on our recent precedents, we agree and hold that Bevington's interpretations constituted expert testimony within the scope of Rule 702.

This Court has recently explained: "An individual testifying about the operations of a drug conspiracy because of knowledge of that drug conspiracy . . . should be admitted as a lay witness; an individual testifying about the operations of a drug conspiracy based on previous experiences with other drug conspiracies . . . should be admitted as an expert." *Wilson*, 605 F.3d at 1026.[2] We have drawn that line because knowledge derived from previous professional experience falls squarely "within the scope of Rule 702" and thus by definition outside of Rule 701. *See* Fed. R. Evid. 701(c). Other courts of appeals have reached the same conclusion. *See United States v. Oriedo*, 498 F.3d 593, 602-03 (7th Cir. 2007); *United States v. Garcia*, 413 F.3d 201, 216-17 (2d Cir. 2005). At oral argument in this case, the Government stated that "if an agent is testifying based on his experience in other investigations and his experience as a narcotics investigator, as opposed to simply his personal perceptions in the case, after *Wilson*, that yes, if there were an objection, we would have to satisfy Rule 702." Tr. 34. That's what happened here.[3]

---

[2] Our *Wilson* decision was issued after the trial in this case.

[3] Of course, there is "no bar in this Circuit to dual testimony as both a fact and expert witness." *United States v. Ramsey*, 165 F.3d

The question, then, is whether this error requires vacatur of the three drug-related counts or instead was harmless. Under the harmless-error standard of Rule 52(a), we disregard a non-constitutional evidentiary error "unless it had a 'substantial and injurious effect or influence in determining the jury's verdict.' The government bears the burden of proving the absence of such an effect." *United States v. Linares*, 367 F.3d 941, 952 (D.C. Cir. 2004) (citation omitted) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).

Here, the error is harmless. Bevington would have qualified as an expert and testified about the slang conversations under Rule 702. The Government would have established Bevington's qualifications as an expert witness based on his 21 years with the FBI and 17 years investigating drug crimes, hundreds of drug investigations, and thousands of hours listening to wiretapped conversations between drug dealers. Moreover, as we have explained earlier, the evidence against Smith in this case was overwhelming. Therefore, like other courts of appeals that have confronted similar scenarios, we conclude that allowing Bevington to testify as a lay witness constituted harmless error. *See United States v. Figueroa-Lopez*, 125 F.3d 1241, 1247 (9th Cir. 1997) ("Given this background, we are certain he was qualified to deliver the opinion testimony disputed in this case, and the failure formally to go through the usual process – although an error – was clearly harmless."); *United States v. Maher*, 645 F.2d 780, 783-84 (9th Cir. 1981) ("Since the testimony was

---

980, 984 (D.C. Cir. 1999) (internal quotation marks omitted); *see also United States v. Catlett*, 97 F.3d 565, 571 (D.C. Cir. 1996) ("[E]very federal court to consider the issue of dual testimony as both a fact and expert witness has concluded that the Federal Rules of Evidence permit such testimony.").

admissible expert opinion, any alleged error committed by the trial judge in admitting the evidence under the lay opinion rule was harmless."); *United States v. DeLoach*, No. 99-4441, 2000 WL 274972, at *3 (4th Cir. Mar. 14, 2000) ("we find that even if the court erred by admitting it as lay testimony, the error was harmless because Riani could have been certified as an expert under Rule 702").

C

At the beginning of trial, over Smith's objection, Bevington testified: "Mr. Smith and Mr. Glover were working together putting their money together and going to New York to buy heroin." On appeal, Smith argues that this description by Bevington of Smith's relationship with Glover constituted improper "overview testimony" based on inadmissible hearsay, and thus violated Federal Rule of Evidence 701.

Federal Rule of Evidence 802 prohibits certain hearsay and therefore generally bars a government agent from relaying inadmissible hearsay to the jury. Relatedly, some courts have held that Rule 701[4] precludes a government agent from offering the agent's "opinions or inferences" as a lay witness based on inadmissible hearsay. Those courts have generally articulated that principle in cases in which the agent provided "overview testimony" at the beginning of trial in order to give the jury a preview of the evidence it will hear. Typically, the agents have recounted hearsay or offered

---

[4] Rule 701 states: "If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."

hearsay-based opinions based on information learned during their conversations with witnesses, informants, and other agents. *See United States v. Flores-de-Jesus*, 569 F.3d 8, 24 (1st Cir. 2009); *United States v. Garcia*, 413 F.3d 201, 213 (2d Cir. 2005); *United States v. Griffin*, 324 F.3d 330, 348 (5th Cir. 2003).[5]

The courts of appeals that have rejected such testimony have started with the basic proposition that "[h]earsay does not become admissible merely because it is provided by a government agent in the form of an overview of the evidence." *United States v. Garcia-Morales*, 382 F.3d 12, 17

---

[5] *Cf. Flores-de-Jesus*, 569 F.3d at 24 ("Most of [the challenged testimony] was based on inadmissible hearsay."); *United States v. Aviles-Colon*, 536 F.3d 1, 21 n.13 (1st Cir. 2008) ("Agent Gil did not limit his testimony to what he saw, but rather gave his conclusion that this defendant was a member of the conspiracy."); *United States v. Rodriguez*, 525 F.3d 85, 96 (1st Cir. 2008) ("Agent Toro's remarks were not based on his personal observations, and no evidence had been presented to support his conclusion that Appellant was in fact a leader of the drug point or that he participated in Espada's violent eviction from the housing project."); *United States v. Casas*, 425 F.3d 23, 51 (1st Cir. 2005) ("This line of testimony appears to have been based, at least in part, on information provided" to the testifying agent by another witness.); *United States v. Garcia-Morales*, 382 F.3d 12, 16 (1st Cir. 2004) (witness's opinion should have been excluded when it was based on "a conversation, at which he was not present, between the informant and [a drug smuggler]"); *United States v. Casas*, 356 F.3d 104, 119 (1st Cir. 2004) ("Agent Stoothoff's testimony was likely, at least in part, based on the statements of a witness that the government chose not to call at trial"); *Garcia*, 413 F.3d at 213 ("Agent Klemick's opinion was not limited to a summary of his own observations"); *Griffin*, 324 F.3d at 348 ("Martin admitted that his statement . . . was not based on personal knowledge but on what someone told him").

(1st Cir. 2004). The courts have viewed agents' hearsay-laden or hearsay-based overview testimony at the onset of trial as a rather blatant prosecutorial attempt to circumvent hearsay rules. And the courts have leveled some choice words at this particular prosecutorial tactic. *See Flores-de-Jesus*, 569 F.3d at 27 (First Circuit) ("if prosecutors fail to heed our guidance in the future, they may be referred for sanctions"); *United States v. Aviles-Colon*, 536 F.3d 1, 21 n.13 (1st Cir. 2008) ("It is troubling to us that the government's use of the overview testimony indicates an unawareness of our" prior precedent on this issue.); *United States v. Rodriguez*, 525 F.3d 85, 95 (1st Cir. 2008) ("This court on several occasions has strongly cautioned the Government against the practice . . . ."); *United States v. Casas*, 356 F.3d 104, 120 (1st Cir. 2004) ("The fact that we and the Fifth Circuit have now had to address the government's use of such preliminary overview government agent witnesses is a troubling development."); *Garcia*, 413 F.3d at 214 (Second Circuit) ("We share this concern" previously expressed by the Fifth Circuit "and similarly condemn the practice . . . ."); *Griffin*, 324 F.3d at 349 (Fifth Circuit) ("We unequivocally condemn this practice . . . .").

We will assume without deciding that the Rule 802/701 principle set forth in those cases applies in this Circuit as well. In any event, the Government did not violate the principle in this case. Bevington's objected-to testimony was not based on otherwise inadmissible hearsay. *Cf. United States v. Rosado-Perez*, 605 F.3d 48, 55-56 (1st Cir. 2010) (agent's overview of "members of the conspiracy and their roles" admissible when not based on inadmissible hearsay).

To reiterate, Agent Bevington stated: "Mr. Smith and Mr. Glover were working together putting their money together and going to New York to buy heroin." Bevington's opinion

about Smith and Glover's activities was based on statements of Smith and his co-conspirator Glover that Bevington himself heard when listening to thousands of intercepted conversations. Those statements were not inadmissible hearsay because they were either admissions of a party-opponent (Smith's statements) or co-conspirator statements (Glover's statements). *See* Fed. R. Evid. 801(d)(2). That distinguishes Bevington's testimony in this case from agent testimony based on inadmissible hearsay – such as testimony based on an agent's conversations with witnesses, informants, and other agents – that other courts have found to be in violation of Rules 802 and 701.

Moreover, even if the District Court erred in admitting Bevington's one-sentence description of Smith's relationship with Glover, it was harmless error. As noted above, the Government introduced devastating evidence of Smith's guilt, including evidence proving exactly what Bevington stated – namely, that Smith and Glover pooled their money, traveled to New York, and bought heroin. The jury heard numerous incriminating conversations between Smith and Glover that strongly and directly supported that conclusion. Bevington's brief statement about Smith and Glover's relationship thus had no discernible effect on the jury's verdict.[6]

---

[6] Finding such testimony to be harmless error is consistent with the conclusions of courts that have condemned overview testimony as a general matter yet found it to be harmless error in the particular case. In other words, those courts have not deemed improper overview testimony to be per se reversible error. *See, e.g.*, *Flores-de-Jesus*, 569 F.3d at 30 ("harmless error analysis saves the government's convictions"); *Casas*, 425 F.3d at 52 ("no prejudice resulted from the court's improper admission of Agent Stoothoff's overview testimony"); *Garcia*, 413 F.3d at 217 ("this single evidentiary error had no substantial and injurious effect or influence on the jury verdict and, thus, was harmless") (internal

D

Officer Joseph Bellino, a former U.S. Park Police officer, testified about a 2004 traffic stop of Smith. Bellino stated that, during the stop, he searched Smith's car and found a gun and "two large bundles."

At trial, Smith objected to the officer's reference to "bundles," and the District Court sustained the objection. The court then told the jury: "We are going to just talk about this weapon that was allegedly found in the car. Nothing else."

On appeal, Smith expresses concern that the jury might have thought the bundles referred to bundles of heroin. According to Smith, the District Court thus should have instructed the jury to disregard the "bundles" reference. But even assuming such an instruction was necessary here, *cf. Casas*, 356 F.3d at 114, the District Court essentially gave it: The District Court sustained the objection and told the jury that only the weapon in the car was to be discussed. The jury could not have considered the "bundles" reference if it followed the judge's instruction. "We normally presume that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an overwhelming probability that the jury will be unable to follow the court's instructions and a strong likelihood that the effect of the evidence would be devastating to the defendant." *United States v. Foster*, 557 F.3d 650, 656 (D.C. Cir. 2009). By sustaining the objection and telling the jury that only the gun in the car was to be discussed, the District Court

---

quotation marks omitted); *Garcia-Morales*, 382 F.3d at 16 ("this error was harmless"); *Casas*, 356 F.3d at 121-22 (error harmless for two of the appellants); *Griffin*, 324 F.3d at 350-51 (improper overview testimony was harmless when "viewed in light of the record as a whole").

adequately cured whatever problem might have been created by Officer Bellino's reference to "bundles."

E

Finally, Smith argues that the District Court improperly increased the mandatory minimum sentence for the conspiracy count from 10 to 20 years based on Smith's prior New York felony drug conviction. Smith contends that he had a Sixth Amendment right to have the jury find the fact of his prior felony drug conviction.

Smith's request for a jury finding is foreclosed by *Almendarez-Torres v. United States*, 523 U.S. 224 (1998). There, the Supreme Court held that the fact of a prior conviction need not be proved to a jury in order to increase the defendant's sentence. *Id.* at 247.

Smith protests that the reasoning of *Almendarez-Torres* is in tension with the reasoning of later sentencing cases from the Supreme Court. *See United States v. Booker*, 543 U.S. 220 (2005); *Apprendi v. New Jersey*, 530 U.S. 466 (2000). Perhaps so. But those later cases nonetheless explicitly reaffirmed the rule announced in *Almendarez-Torres*. *See Booker*, 543 U.S. at 244; *Apprendi*, 530 U.S. at 490. As a lower court, we of course remain bound by *Almendarez-Torres*.

* * *

We vacate the judgment of the District Court with respect to Smith's conviction for unlawful possession of a firearm by a felon. We affirm the judgment of the District Court with respect to the other three counts of conviction. Because Smith's sentence for the felon-in-possession conviction runs

concurrently with counts of conviction that are affirmed, his 25-year term of imprisonment will not change.  We remand for further proceedings consistent with this opinion.

*So ordered.*