# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued February 13, 2012

Decided June 5, 2012

No. 08-3082

UNITED STATES OF AMERICA,
APPELLEE

v.

ERNEST MILTON GLOVER,
APPELLANT

Consolidated with 08-3083, 08-3084

Appeals from the United States District Court
for the District of Columbia
(No. 1:07-cr-00152)

*Jenifer Wicks*, *Allen H. Orenberg*, appointed by the court, and *Marcia G. Shein* argued the causes for appellants Glover, Suggs, and Price, respectively, and filed the briefs for appellants.

*Patricia A. Heffernan*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were *Ronald C. Machen Jr.*, U.S. Attorney, and *Roy W. McLeese III*, *John K. Han*, and *Anthony Scarpelli*, Assistant U.S. Attorneys. *Mary B. McCord*, Assistant U.S. Attorney, entered an appearance.

Before: HENDERSON, BROWN, and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* KAVANAUGH.

KAVANAUGH, *Circuit Judge*: Ernest Glover, Anthony Suggs, and Helery Price were convicted for their roles in a PCP-distribution enterprise. We affirm the judgments of conviction.

I

In 2007, the Federal Bureau of Investigation and the Metropolitan Police Department conducted a joint investigation of a PCP-distribution conspiracy operating in the District of Columbia. Investigators obtained approval from a federal district judge to wiretap Suggs's cell phone. Investigators also obtained a search warrant from a D.C. Superior Court judge and searched Suggs's house pursuant to that warrant. Glover, Suggs, and Price were ultimately arrested and indicted. A federal jury found Glover, Suggs, and Price guilty of a PCP-distribution conspiracy offense. *See* 21 U.S.C. § 846. The jury also found Suggs guilty of unlawful possession with intent to distribute PCP. *See* 21 U.S.C. § 841(a)(1), (b)(1)(A)(iv). The District Court sentenced Glover and Price to life imprisonment for the conspiracy offense and sentenced Suggs (who did not have quite as extensive a prior felony drug record as Glover and Price) to two 20-year terms for the conspiracy and possession with intent to distribute offenses.

3

II

Defendants challenge their convictions on various grounds.  We find none of their arguments convincing.

A

Before trial, Price moved under Federal Rule of Criminal Procedure 14 to sever his trial from that of his co-defendants. The District Court denied the motion.

On appeal, Price asserts that he should have been tried separately because there was less evidence against him than against co-defendants Glover and Suggs.  We review for abuse of discretion a district court's denial of a motion to sever.  *See United States v. Celis*, 608 F.3d 818, 844 (D.C. Cir. 2010).

In interpreting Rule 14, the Supreme Court has stated that joint trials "'play a vital role in the criminal justice system'"; they "promote efficiency and 'serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'" *Zafiro v. United States*, 506 U.S. 534, 537 (1993) (quoting *Richardson v. Marsh*, 481 U.S. 200, 209, 210 (1987)).  A defendant is therefore not entitled to severance under Rule 14 unless there is "a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539.

Here, there was no such "serious risk."  The Government presented extensive evidence not just against Glover and Suggs but also against Price, including numerous wiretapped conversations.  Moreover, the District Court instructed the jury to consider each defendant's guilt or innocence

separately based on the evidence pertaining to that defendant. As this Court has said, jury instructions of that sort mitigate the potentially negative impact of a joint trial. *See United States v. Moore*, 651 F.3d 30, 95 (D.C. Cir. 2011) ("absent a *dramatic* disparity of evidence, any prejudice caused by joinder is best dealt with by instructions to the jury to give individual consideration to each defendant") (brackets and citation omitted).

In short, the District Court did not abuse its discretion by denying Price's motion to sever.

B

In searching Suggs's house pursuant to a search warrant that was issued by a D.C. Superior Court judge, law enforcement officers recovered 13 bottles of PCP, containing a total of 7.7 kilograms of PCP. The officers also seized four buckets with PCP residue, a measuring cup, a funnel, air freshener, $7,000 in cash, and a corresponding cash withdrawal receipt signed "Anthony M. Suggs."

Before trial, Suggs moved to suppress the evidence seized from his house. The District Court denied the motion.

On appeal, Suggs raises two alternative arguments that the District Court erred in denying his suppression motion: (1) the law enforcement officers' initial entry into his house was warrantless; and (2) the affidavit in support of the search warrant issued by the D.C. Superior Court judge did not establish probable cause. On those issues, we review the District Court's legal conclusions de novo and its factual findings for clear error. *See United States v. Bailey*, 622 F.3d 1, 5 (D.C. Cir. 2010).

1

While listening by wiretap to one of Suggs's cell phone conversations, law enforcement officers learned that an odor consistent with PCP was emanating from Suggs's house. Law enforcement and fire department personnel then went to the exterior of Suggs's house. Investigator Eames of the Metropolitan Police Department smelled an odor consistent with PCP. Before the law enforcement officers obtained a search warrant, law enforcement and fire department personnel entered Suggs's house and looked around to make sure that no evidence was destroyed and that there was no fire or hazardous materials risk. The officers seized no evidence at that time.

The law enforcement officers sought a search warrant. Investigator Kyle of the Metropolitan Police Department prepared the supporting affidavit. The affidavit did not rely on what the officers observed during their initial entry into Suggs's house. Rather, the affidavit stated among other things that while outside Suggs's house, Investigator Eames smelled an odor consistent with PCP coming from the house. A D.C. Superior Court judge issued a search warrant. Acting pursuant to the search warrant, the officers then seized evidence from Suggs's house.

Suggs contends that the law enforcement officers' initial entry into his house was unlawful and that the evidence later seized from his house therefore should have been suppressed. But even assuming for the sake of argument that the initial entry was unlawful, evidence subsequently seized pursuant to a valid search warrant is admissible when "there was an independent source for the warrant under which that evidence was seized." *Segura v. United States*, 468 U.S. 796, 814 (1984). Here, the officers had such an independent source –

namely, before the law enforcement officers' initial entry into Suggs's house, Investigator Eames detected an odor consistent with PCP coming from the house. Suggs thus cannot use the initial entry as the hook to suppress evidence later seized pursuant to a valid and independently obtained search warrant. *See id.* at 813-14; *see also Hudson v. Michigan*, 547 U.S. 586 (2006); *Murray v. United States*, 487 U.S. 533 (1988).

2

Suggs also challenges the issuing judge's probable-cause determination and on that basis says that the evidence seized from his house should have been excluded.

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. CONST. amend. IV. When police obtain evidence by way of an unlawful search, the exclusionary rule may require exclusion of that evidence in some circumstances. As the Supreme Court has instructed, however, the exclusionary rule has limited force in cases involving a search with a search warrant. In particular, reviewing courts may not exclude evidence "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope." *United States v. Leon*, 468 U.S. 897, 920 (1984). The reason is evident: "In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient." *Id.* at 921. The "exclusionary rule was adopted to deter unlawful searches by police, not to punish the errors of magistrates and judges." *Massachusetts v. Sheppard*, 468 U.S. 981, 990 (1984) (citation omitted). In this case, therefore, even assuming that probable cause was

lacking for the search warrant – which is not in any way clear – the evidence seized from Suggs's house was properly admitted under *Leon*.

To get around *Leon*, Suggs invokes one of the recognized exceptions to the *Leon* principle. Under *Leon*, suppression "remains an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." *Leon*, 468 U.S. at 923 (citing *Franks v. Delaware*, 438 U.S. 154 (1978)).

In the affidavit here, Investigator Kyle stated that Investigator Eames had smelled an odor consistent with PCP coming from Suggs's house. According to Suggs, Investigator Eames lied. But the District Court specifically believed Investigator Eames on that point. Suggs presents no persuasive basis for us to disturb the District Court's credibility finding.

Suggs separately asserts that the affidavit improperly failed to disclose the wiretapped conversation that initially prompted officers to head to Suggs's house. For an omission to meet the *Franks* standard, the officer must at least have knowingly and intentionally (or with reckless disregard) omitted a fact that would have defeated probable cause. *See United States v. Spencer*, 530 F.3d 1003, 1007 (D.C. Cir. 2008); 2 WAYNE R. LAFAVE, SEARCH AND SEIZURE § 4.4(b), at 543-46 (4th ed. 2004). But here, including information about the wiretapped conversation would only have strengthened the case for probable cause. So the argument fails.

Suggs also contends that the warrant affidavit improperly failed to disclose that law enforcement and fire department

personnel had already entered Suggs's house without a warrant. But that fact was not relevant to the probable cause determination. The question was whether the detection of an odor consistent with PCP by a trained law enforcement officer established probable cause for the search warrant.

C

Before trial, defendants moved to suppress the recordings obtained from the wiretap on Suggs's cell phone. The District Court denied the motion.

On appeal, defendants contend that the District Court erred in denying their suppression motion for any of three alternative reasons: (1) extension of the wiretap beyond the initial 30-day period did not satisfy the statutory necessity requirement; (2) the law enforcement officers' minimization efforts were not reasonable; and (3) the wiretap did not authorize interception of one of the snippets of conversation introduced at trial.

1

During the investigation, law enforcement officers sought to extend the wiretap on Suggs's cell phone beyond the initial 30-day period set forth by the authorizing federal district judge. To grant such an extension, the authorizing judge had to find probable cause and necessity. The authorizing judge did so here.

On appeal, defendants do not contest probable cause. They challenge only the authorizing judge's necessity determination. We review that necessity determination for abuse of discretion. *See United States v. Maynard*, 615 F.3d 544, 550 (D.C. Cir. 2010). A district court gives deference to

the authorizing judge's necessity determination. But the court of appeals does not typically give a second layer of deference to a district court's assessment of the authorizing judge's necessity determination. Not much turns on that point, but we note it for purposes of analytical clarity.

To authorize a wiretap, an authorizing judge must determine that the wiretap is supported by probable cause and necessity. *See* 18 U.S.C. § 2518(3). The necessity determination requires the judge to find that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(3)(c). That requirement is satisfied when "traditional investigative techniques have proved inadequate to reveal the operation's full nature and scope." *United States v. Becton*, 601 F.3d 588, 596 (D.C. Cir. 2010) (internal quotation marks omitted). The wiretap may be authorized for a maximum of 30 days. 18 U.S.C. § 2518(5). A judge may extend the authorization for additional periods of up to 30 days each after finding probable cause and necessity for the extension. 18 U.S.C. § 2518(5); *see also* 18 U.S.C. § 2518(3).

To support extension of the wiretap on Suggs's cell phone, law enforcement officers submitted affidavits to the authorizing federal district judge explaining that traditional investigative methods were still inadequate to reveal the full nature and scope of the PCP-distribution conspiracy. Those affidavits stated that Suggs was "extremely surveillance conscious" and that "the use of the cooperating witnesses alone would not have provided the type and quality of evidence necessary to prosecute Suggs." *United States v. Suggs*, 531 F. Supp. 2d 13, 19 (D.D.C. 2008). The affidavits also specified aspects of the PCP-distribution conspiracy that law enforcement had been unable to uncover, including

"where the PCP distributed by the organization was manufactured" and "how it was transported into the Washington D.C. area." *Id.*

Given the explanation in the affidavits, the authorizing judge did not abuse her discretion in finding that the necessity requirement was met.

2

Law enforcement officers intercepted more than 4,000 phone calls to and from Suggs's cell phone over the course of the wiretap. During more than 600 of those phone calls, law enforcement officers recognized that the conversations were not relevant and stopped monitoring them so as to comply with the statutory minimization requirement. *See* 18 U.S.C. § 2518(5); *United States v. Anderson*, 39 F.3d 331, 342 (D.C. Cir. 1994).

Defendants maintain that law enforcement's minimization efforts were not reasonable because too few calls were minimized. They argue that the wiretapped conversations therefore should have been excluded from evidence.

The statute requires that wiretaps "be conducted in such a way as to minimize the interception of communications not otherwise subject to interception." 18 U.S.C. § 2518(5). But that statutory command "'does not forbid the interception of all nonrelevant conversations.'" *United States v. Carter*, 449 F.3d 1287, 1292 (D.C. Cir. 2006) (quoting *Scott v. United States*, 436 U.S. 128, 140 (1978)). Rather, it requires only that the Government "make reasonable efforts to 'minimize' the interception of such conversations." *Carter*, 449 F.3d at 1292. As one would expect, determining the reasonableness

of minimization efforts is a fact-specific inquiry; "there can be no inflexible rule of law which will decide every case." *Scott*, 436 U.S. at 139.

The District Court here determined that law enforcement's minimization efforts were reasonable. Our cases have not set forth a clear standard of review on this question. Regardless of the appropriate standard of review, we find no reversible error here.

The District Court correctly concluded that a low number of minimized calls does not itself show that the minimization efforts were unreasonable. We have held that "a defendant who does not identify specific conversations that should not have been intercepted, or even a pattern of such conversations has offered no concrete indications that the government failed to meet its obligations to minimize intercepted communications, and thereby failed to show error by the district court." *Carter*, 449 F.3d at 1295 (ellipsis and internal quotation marks omitted). A low number of minimized calls does not tell us much because the minimization inquiry focuses on the content of the intercepted communications, not the number.

Suggs also raises a separate minimization issue. On one occasion, a law enforcement officer did not recognize that an attorney was calling Suggs. The officer inadvertently kept monitoring the call. Defendants contend that the improperly intercepted phone call between Suggs and the attorney demonstrates that law enforcement's minimization efforts were not reasonable. That argument fails because law enforcement took a variety of measures to remedy the error. Law enforcement sealed the call, removed the responsible law enforcement officer from the investigation, and reviewed some of the minimization procedures with the other law

enforcement officers participating in this part of the investigation. Particularly in light of these steps, this one episode does not demonstrate that the minimization efforts were unreasonable.

In short, the District Court did not commit any reversible error in concluding that the minimization efforts were reasonable. We therefore need not address the question of the proper remedy for violation of the minimization requirement. *See id*. at 1296.

3

On one occasion when Price called Suggs, the wiretap captured Price talking before the call went to Suggs's voicemail. Price apparently was speaking to another person in his presence while calling Suggs. Price was caught saying: "I know he ain't got nothing. He'd a been called [t]he way we was moving that shit." Supplemental Appendix tab 1. At trial, the District Court allowed introduction of that snippet even though Suggs had not answered the call and thus was not participating in the conversation.

Defendants say that the authorization for the wiretap on Suggs's cell phone did not cover the statements Price made before the call went to Suggs's voicemail. Defendants contend that the introduction of those two sentences into evidence was error requiring a new trial.

Even if introducing those statements was erroneous and even if defendants properly objected to the error – neither of which is in any way clear – defendants have not shown prejudice. Put simply, in light of the numerous wiretapped conversations introduced against defendants, those two sentences constituted a very small drop in a very large bucket

of evidence against them.  Therefore, any potential error was harmless.

D

At trial, FBI Agent Bevington testified about the meaning of slang terms used by defendants in the wiretapped conversations – terms such as "water" (PCP), "boat" (marijuana laced with PCP), "16th Street" (16 ounces), and "32nd Street" (32 ounces).  Agent Bevington also explained where PCP is manufactured, in what quantities it is sold, and at what price.

Agent Bevington did not testify as an expert witness under Federal Rule of Evidence 702.  Rather, he testified as a lay witness under Federal Rule of Evidence 701.

On appeal, defendants assert that allowing Agent Bevington to testify as a lay witness, instead of requiring him to qualify as an expert witness, was reversible error.

Our recent decision in *United States v. Smith*, 640 F.3d 358 (D.C. Cir. 2011), addressed this precise issue.  (Our decision in *Smith* came after the District Court's ruling in this case, so the District Court was not aware of the *Smith* opinion when it considered the issue here.)  In *Smith*, we reviewed Agent Bevington's testimony in another drug-distribution conspiracy case.  We held that his testimony about the meaning of slang terms used for heroin in wiretapped conversations constituted expert testimony within the scope of Rule 702.  *Id*. at 365.  We also ruled, however, that allowing Agent Bevington to testify as a lay witness in that case was harmless error because he "would have qualified as an expert . . . based on his 21 years with the FBI and 17 years investigating drug crimes, hundreds of drug investigations,

and thousands of hours listening to wiretapped conversations between drug dealers." *Id.* at 366. That reasoning applies with equal force here and disposes of defendants' argument concerning Agent Bevington's testimony.

E

During the trial, a juror suddenly realized that she knew defendant Glover's wife. The juror told the District Court. After questioning the juror about the scope of the relationship between the juror and Glover's wife, the District Court dismissed the juror over defendants' objection and impaneled an alternate juror.

On appeal, defendants challenge the juror's dismissal. A district court may impanel alternate jurors to replace original jurors "who are unable to perform or who are disqualified from performing their duties." Fed. R. Crim. P. 24(c)(1). We review for abuse of discretion a district court's decision to dismiss a juror and to impanel an alternate juror. *See United States v. Donato*, 99 F.3d 426, 429 (D.C. Cir. 1996).

The District Court acted well within the bounds of its discretion in dismissing the juror. While questioning the juror, the District Court learned that the juror's daughter had gone to school with Glover's wife and had been friends with her. Indeed, both the juror and her daughter continued to see Glover's wife in their neighborhood. The juror also knew Glover's wife's mother, aunts, and cousins. The District Court reasonably explained that the connection between the juror and Glover's wife, the continued interaction between their families, and the potential for implied bias counseled in favor of dismissing the juror.

We find no reversible error in the District Court's prompt and sensitive handling of this issue.

F

The District Court instructed the jury that if the jury found a defendant guilty of conspiracy, the jury must determine the quantity of PCP for which the defendant was responsible. During deliberations, the jury sent a note to the District Court about the drug quantity issue. The note asked: "Is a co-conspirator responsible for the total amount of PCP of all co-conspirators even if the co-conspirator in question did not know all of the co-conspirators and did not know the specific amounts each co-conspirator possessed?" Joint Appendix 659. In the hope that repeating the original drug quantity instruction would suffice to answer the jury's question, the District Court reiterated its original instruction to the jury. Defendants objected to that course of action, arguing that the District Court should give a supplemental instruction.

On appeal, defendants maintain that the District Court did not respond sufficiently to the jury's question. We review for abuse of discretion a district court's response to a jury question of this sort. *See United States v. Laing*, 889 F.2d 281, 290 (D.C. Cir. 1989).

Our case law dictates that district courts have "considerable discretion in determining how to respond, if at all, to a jury's request for clarification of a jury instruction." *Id*. "Where the jury explicitly reveals its confusion on an issue, however, the court should reinstruct the jury to clear away the confusion." *Id*.

Here, the District Court's response did not constitute an abuse of discretion. Rather than muddy the waters after receiving the jury's inquiry, the District Court reasonably chose to repeat the original instruction (which has not itself been challenged on appeal). And in repeating the original instruction, the District Court specifically told the jury that "if you have further questions, we will take them up after lunch." Joint Appendix 658. The jury asked no further questions. *See United States v. Heid*, 904 F.2d 69, 70, 72 (D.C. Cir. 1990) (conviction affirmed when district court responded to jury question by repeating instruction and asking if that dispelled jury's confusion).

G

Glover and Price challenge the sufficiency of the evidence supporting their convictions.

Evidence of a conspiracy is sufficient if, "when viewed in the light most favorable to the government, it would permit a rational jury to find the elements of conspiracy beyond a reasonable doubt." *United States v. Baugham*, 449 F.3d 167, 171 (D.C. Cir. 2006). The drug conspiracy statute under which defendants were convicted, 21 U.S.C. § 846, "dispenses with the usual requirement of an overt act and requires only an agreement to commit" any of the enumerated offenses. *Id*. We thus must uphold the convictions of Glover and Price if a rational jury could find that the evidence, when viewed in the light most favorable to the Government, showed that Glover and Price were parties to an agreement to distribute or to possess with intent to distribute one kilogram or more of PCP. In undertaking our deferential review of the jury's verdict, we draw "no distinction between direct and circumstantial evidence" and give "full play to the right of the jury to determine credibility, weigh the evidence and draw

justifiable inferences of fact." *United States v. Carson*, 455 F.3d 336, 368-69 (D.C. Cir. 2006) (citation omitted).

Glover and Price do not deny that there was sufficient evidence to find an agreement to distribute or to possess with intent to distribute one kilogram or more of PCP. They argue only that there was insufficient evidence to find that they were parties to that agreement. Given the voluminous evidence presented at trial, that is a fairly weak argument. Numerous wiretapped conversations linked Glover and Price to Suggs and to the conspiracy. Moreover, when law enforcement officers ultimately searched Glover's house, they seized three bottles containing 184.3 grams of PCP, 48 small bottles and tops, two funnels, two eye droppers, two turkey basters, a digital scale, $985 in cash, a sawed-off shotgun, a standard shotgun, a rifle, ammunition, marijuana, heroin, and resealable plastic bags. Viewing the evidence in the light most favorable to the Government, as we must on appeal from a guilty verdict, we conclude that a rational jury could readily find Glover and Price guilty.

\* \* \*

We have carefully considered all of defendants' arguments. We affirm the judgments of conviction.

*So ordered.*