UNITED STATES of America

v.

Michael MATTHEWS, Defendant.

Criminal Case No. 12-066 (RBW)

United States District Court,
District of Columbia.

Filed July 3, 2012

Signed July 2, 2012

Magdalena A. Acevedo, Pamela Stever Satterfield, Thomas Anthony Quinn, Barry Wiegand, U.S. Attorney's Office, Washington, DC, for United States of America.

Gary E. Proctor, Gary E. Proctor, LLC, Baltimore, MD, Jenifer Wicks, Law Offices of Jenifer Wicks, John Anthony Briley, Jr., Law Offices of John A. Briley, Jr., Washington, DC, for Defendant.

## ORDER

REGGIE B. WALTON, United States District Judge

This case is before the Court on the defendant's Motion to Suppress Tangible Evidence and Statements [1] ("Def.'s Mot."), which is opposed by the government, see Gov't Opp'n. For the reasons that follow, the motion is denied.

### I. Background

On December 1, 2011, Michael Fanone, an officer of the Washington, D.C. Metropolitan Police Department ("MPD"), submitted a sworn affidavit in support of an application for a search warrant for 1500 Massachusetts Avenue, N.W., Washington, D.C.[2] Gov't Opp'n ¶ 1. "In his affidavit,

---

1. As an initial matter, although titled as a motion to suppress evidence and statements, the defendant's motion contains no detail or factual allegations regarding any statements made by the defendant. The Court therefore agrees with the government that "the defendant has not properly raised this issue and his request should be summarily denied." Gov-ernment's Opposition to Defendant's Motion to Suppress Tangible Evidence and State-ments ("Gov't Opp'n") at 1, n. 1.

2. At that time, and at all times relevant to this case, the defendant was the sole, lawful occu-pant of apartment number 2 at 1500 Massa-chusetts Avenue, N.W. Def.'s Mot. at 1.

Officer Fanone included information about the defendant's distribution of methamphetamine from his apartment at 1500 Massachusetts Avenue, N.W." Id. ¶ 3. Specifically, the affidavit read:

> This morning, Thursday, December 1, 2011, I spoke with a person who is especially familiar with the details of large-scale illegal sales of methamphetamine drugs in Washington, D.C. This person told me that it had bought wholesale quantities of crystal methamphetamine from a person it knows as M—— M—— [name deliberately omitted], a resident of apartment number two at 1500 Massachusetts Avenue, N.W., Washington, D.C. I believe this person because I have recently seen sizable quantities of suspected methamphetamines and a large amount of cash in the residence where this source lives. Further, the source has been independently described to me by other persons from whose homes other officers and I have seized methamphetamines and documents about methamphetamine sales. These other persons have told me how much my source knows about methamphetamine sales and has taken part in the drug-selling business for some time. This source told me that Mr. M—— has been selling methamphetamine for more than three years. . . . The source has known MM for more than three years and during that time has never known MM to hold any employment other than selling illegal drugs. In this affidavit, I have not recounted all of the events that took place, nor all of what I learned from my source.

Fanone Aff. at 1-2.[3] The affidavit continued:

> When I interviewed this source, it told me that there was some urgency to ap-plying for a warrant to go search the apartment at 1500 Massachusetts Avenue, N.W. The source told me that very recent events include the arrest of a person known to the source, who I also strongly suspect has sold methamphetamine, likely would cause MM to try swiftly to move or get rid of its drugs. The source told me that it thought that MM had not yet learned of all of the arrests in this investigation, but surely would be likely to do so very fast. I should note that my assessment of the circumstances in which the source told me about MM's methamphetamine sales indicate that the source was trying to get "a break" from full enforcement of the drug laws. It is not, to use a slang phrase, "working off a beef"—instead, it was trying to get me or police or the U.S. Attorney's Office to "cut it a break," again to use a street phrase. More cynical persons, of course, might suspect it wanted to eliminate competition. It has not yet admitted to me what I believe to be the full extent of its criminal activities involving methamphetamine, but the circumstances of this source giving me this information have led to me applying for this warrant late in the evening today.

Id. at 3.

The same day the affidavit was sworn, December 1, 2011, a judge of the Superior Court of the District of Columbia issued an order authorizing the search warrant and officers of the MPD executed the warrant. Gov't Opp'n ¶¶ 1-2. During the search, the officers recovered "a large quantity of crystal methamphetamine, gamma-hydroxybutyric acid, and drug paraphernalia." Id. The defendant, through counsel, now argues that this evidence must be sup-

---

**3.** Although neither party attached Officer Fanone's affidavit to the filings addressed by this Order, government counsel provided a copy of the affidavit to the Court at a June 13, 2012 status hearing.

pressed because the affidavit did not provide a basis for the finding of probable cause and the issuance of a search warrant. Def.'s Mot. at·4.

## II. Legal Analysis

▮ The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Although "[t]he Supreme Court has applied the exclusionary rule to certain Fourth Amendment violations," United States v. Spencer, 530 F.3d 1003, 1006 (D.C.Cir.2008), the Court has explained that "the Fourth Amendment 'has never been interpreted to proscribe the introduction of illegally seized evidence in all proceedings or against all persons.'" United States v. Leon, 468 U.S. 897, 906, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) (quoting Stone v. Powell, 428 U.S. 465, 486, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976)). For example, "[s]o long as the officer [executing a search warrant] relied in objective good faith on the issuing judge's determination, reviewing courts may not apply the exclusionary rule," Spencer, 530 F.3d at 1006–07, to items seized even if the warrant is later deemed to have been improperly issued, see id. at 1007 (observing that police are "generally entitled to presume that the magistrate knows what he is doing" (internal quotation marks omitted)). However, "suppression . . . remains 'an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth.'" Id. at 1007 (quoting Leon, 468 U.S. at 923, 104 S.Ct. 3405). This exception "[has also] been held to apply under certain circumstances to material omissions—'material' meaning

that their 'inclusion in the affidavit would defeat probable cause.'" Id. (quoting United States v. Colkley, 899 F.2d 297, 301 (4th Cir.1990) (internal citation omitted)).

▮ "There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant." Franks v. Delaware, 438 U.S. 154, 171, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978); see also Spencer, 530 F.3d at 1006 ("To begin with, we give 'great deference' to the issuing judge's probable-cause determination." (quoting Illinois v. Gates, 462 U.S. 213, 236, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983))). But "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request," id. at 155–56, 98 S.Ct. 2674. To demonstrate entitlement to an evidentiary hearing,

the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant. ·

Id. at 171, 98 S.Ct. 2674; see also Colkley, 899 F.2d at 300 ("This showing must be more than conclusory and must be accompanied by a detailed offer of proof." (internal quotation marks and citation omitted)). For an alleged omission "to meet the Franks standard," United States v. Glover, 681 F.3d 411, 419 (D.C.Cir.2012), an affiant "must at least have knowingly and intentionally (or with reckless disregard) omitted a fact that would have defeated probable cause," id. (citing Spencer, 530 F.3d at 1007). And, finally, "the affirmative inclusion of false information in an affidavit is more likely to present a question of impermissible official conduct than a failure to include a matter." Colkley, 899 F.2d at 301.

▮ The defendant maintains that Officer Fanone's affidavit failed to disclose "several highly critical facts." Def.'s Mot. at 2. Specifically, the defendant argues that Officer Fanone's affidavit failed to state: "that the 'source' had a pending felony drug trafficking charge," id.; "that the government was prepared to dismiss that charge," id.; "that the police had recovered a significant quantity of methamphetamine in the apartment belonging to the 'source,'" id. at 3; "that the police had information that the 'source' had been selling drugs for more than one year," id.; that the 'source' had [neither] participated in, nor witnessed, any illegal drug transaction in the previous six (plus) months," id.; and "that the 'source' had absolutely no history of providing information to [Officer] Fanone, or to any law enforcement agent," id. The defendant thus seemingly seeks suppression of the drugs and drug-related items seized during the December 1, 2011 search on the basis of the Leon exception as it pertains to material omissions. See Glover, 681 F.3d at 419 ("To get around Leon, [the defendant has] invoke[d] one of the recognized exceptions to the Leon principle.")

After reviewing the affidavit, the Court must conclude that the defendant has failed to make a "substantial preliminary showing," Franks, 438 U.S. at 155, 98 S.Ct. 2674, that Officer Fanone either knowingly or intentionally, or with reckless disregard, omitted material facts from (or included false statements in) his affidavit. As the government points out, most of what the defendant has termed "omissions" were "either factually incorrect, or were actually disclosed in the affidavit." Gov't Opp'n ¶ 14. First, the affidavit makes numerous references to the source's own involvement in drug-selling and the fact that methamphetamines had recently been found in a search of the source's home. Second, while it may be true that the source had never before provided information to Officer Fanone, Officer Fanone possessed independent knowledge from his prior involvement in investigations into methamphetamine distribution and use in the District of Columbia that tended to demonstrate the source's credibility and he engaged in efforts to corroborate the source's information. See Fanone Aff. ¶ 6(a) ("To corroborate this information, I went to 1500 Massachusetts Avenue, N.W., and spoke to persons engaged in managing the apartment building. They showed me the name of the person who is the tenant in apartment number two. That name is the same as given me by my source. . . .") Third, even if the government had been prepared to dismiss the pending charges against the source in exchange for the source's cooperation—a claim that the government maintains is false, Gov't Opp'n at 5, n.2, it is settled in this Circuit that "an affiant's failure to disclose the backgrounds and alleged biases of informants does not establish the affiant's reckless disregard for truth." United States v. Dale, 991 F.2d 819, 844–45 (D.C.Cir.1993). Finally, even assuming arguendo that the omission of the fact that the source had neither witnessed nor participated in drug

transactions for six-plus months prior to providing information to Officer Fanone—another fact that the government claims is false, Gov't Opp'n ¶ 11; would give rise to stale information,[4] see Defendant's Reply to Government's Opposition to Motion to Suppress Tangible Evidence and Statements at 1, the defendant has failed to make any offer of proof that Officer Fanone omitted this information in a deliberate attempt to mislead the judge who issued the warrant. And, because "Franks protects against omissions that are designed to mislead, or that are made in reckless disregard of whether they would mislead," Colkley, 899 F.2d at 301, the defendant's failure to make an offer of proof regarding the affiant's intent to mislead or reckless disregard renders his request for a Franks hearing insufficient. See id. at 299–300 (explaining that the district court "need not have held a Franks hearing on the integrity of the affidavit because there was no substantial preliminary showing that the affiant intended to mislead the magistrate"); see also United States v. Gaston, 357 F.3d 77, 80 (D.C.Cir.2004) (concluding that the district court was "surely right" when it determined that the defendant had not triggered a Franks hearing because he had "made no offer of proof").

Accordingly, it is hereby

---

4. In light of this Circuit's precedent, it is far from clear that the information could properly be deemed stale. In United States v. Webb, 255 F.3d 890 (D.C.Cir.2001), the Circuit explained that "[c]ourts have been considerably more lenient in assessing the currency of information supporting probable cause in the context of extended conspiracies than in the context of single-incident crimes." 255 F.3d at 905; see also United States v. Johnson, 437 F.3d 69, 72 (D.C.Cir.2006) ("Most significantly for our purposes, our decision in Webb made clear that different kinds of information go stale at different rates."). Thus, although the source of the information provided in Officer Farone's affidavit may not have en-

---

**ORDERED** that the defendant's Motion to Suppress Tangible Evidence and Statements is **DENIED**. It is further

**ORDERED** that, because the motions hearing currently scheduled for July 23, 2012, at 2:00 p.m., is no longer necessary, that scheduled hearing shall be **CANCELED**. Because the tolling of the Speedy Trial Act Clock was premised on the pendency of this motion, the parties are directed to contact the undersigned's courtroom deputy to schedule a status hearing forthwith.

**SO ORDERED** this 2nd day of July, 2012.

---

gaged in drug activity or been in the defendant's apartment for six months or more, he did say that over the course of their three-year relationship he had never known the defendant to have employment and that he derived all of his income from his status as a drug dealer. Gov't Opp'n ¶ 15. Nor was there any representation here of any attempt to purchase drugs that was met with a denial, which might tend to suggest reason to doubt the source's information. See Johnson, 437 F.3d at 72 (explaining that in Webb, "when the informant attempted to purchase more drugs just 12 days before the swearing of the affidavit, Webb told him he didn't have any crack for sale").